UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PANKAJ MERCHIA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 4:20-cv-40100 |
| | * | |
| LAMB AND ASSOCIATES, P.C., and | * | |
| MARTIN LAMB, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM REGARDING THE
DENIAL OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

February 26, 2021

TALWANI, D.J.

In this action, Plaintiff Pankaj Merchia accuses Defendants Lamb and Associates, P.C. and Martin Lamb (collectively "Lamb") of breaching an escrow agreement by refusing to return escrow funds to Merchia following a failed real estate transaction. The Complaint [#1] asserts claims of breach of contract, unfair and deceptive acts under Mass. Gen. Laws ch. 93A, and equitable claims of unjust enrichment and unfair dealing. Plaintiff's Motion for Preliminary Injunction [#14] sought the immediate return of the escrow funds. The court denied the motion from the bench, and now issues this memorandum to set forth in greater detail the court's reasoning.

I. Relevant Background

This matter concerns a failed real estate transaction between Merchia, the purchaser, and Pascack VA Group, LLC ("Pascack"), the seller. Lamb represented Pascack in the transaction. See Defs.' Opp'n Pl.'s Mot. Inj. [Opp'n Mot. Inj.] Ex. F. ¶ 11 [#35]. In addition to representing

Pascack, Lamb performed escrow services in relation to the transaction. See Opp'n Mot. Inj. Ex. B [#33-3].

In the course of negotiating the purchase of the property-at-issue (the "Property"), Lamb conveyed to Merchia, in a September 30, 2020 email, certain terms proposed by Pascack. Merchia contends that he accepted these terms by wiring funds to Lamb, and that the email constitutes an "escrow agreement" between Lamb, acting as escrow agent, and Merchia, acting as buyer. Compl. ¶ 5 [#1]. This alleged escrow agreement, in whole, is as follows:

1. Buyer wires Lamb & Associates $400,000.
2. Lamb & Associates keeps the funds in escrow until it provides to buyers nominee (i) clear and marketable title and (ii) a recorded deed.  Title insurance and buyers legal work to be at buyers sole cost.
3. Buyer to receive keys and occupancy to the property on the day of closing/funding.
4. If, by October 21, 2020 Lamb & Associates has not (i) provided buyer's nominee clear and marketable title and (ii) recorded a Quitclaim deed at the Worcester Registry for my Nominee then Lamb & Associates wires buyer back the $400,000 the next business day.

Mot. Partial Summ. J. Ex. 101, at 3 [#11-1]. The parties do not dispute that after Lamb conveyed these terms to Merchia in an email, Merchia indicated his assent and later wired Lamb $400,000. Pl.'s Exhibit 103, Receipt of Wire [#11-1]; see also Defs.' Opp'n Pl.'s Mot. Partial Summ. J. Pursuant Fed. R. Civ. P. 56(d) & Req. Alternative. Relief Pursuant G.L. c.184, §17A Ex. A ¶ 5 [#34-2]. There is also no dispute that the transaction for the Property never actually took place, Merchia never obtained clear and marketable title to the property, and no Quitclaim deed was recorded at the Worcester Registry. Mot. Partial Summ. J. Ex. 105, at 15 [#11-1]; see also Opp'n Mot. Inj. Ex. F [#35]. Merchia contends that, given the straightforward and clear terms of the alleged agreement, he is entitled, as a matter of law, to the return of the $400,000 from Lamb per paragraph four of the so-called "escrow agreement." Mot. Inj. 11–12 [#14].

Although Merchia characterizes the alleged agreement as a straightforward escrow agreement between him and Lamb, Merchia has also asserted in a state court proceeding that the same agreement is also a Purchase and Sale Agreement for the Property between Merchia and Pascack. See State Court Compl. ¶ 18, Pankaj v. Pascack VA Group LLC, No. 2085-cv-1154 (Mass. Sup. Ct. Oct. 21, 2020) [#33-2] (alleging that this same email agreement entitled Merchia to the Property and demanding, inter alia, specific performance by Pascack).[1] Lamb states that he has discussed his ethical responsibilities as to the $400,000, which he holds in his trust account, with the Massachusetts Board of Bar Overseers. Lamb reports that the Board of Bar Overseers informed Lamb that, because the funds he was holding in escrow were subject to a present dispute between his former client (Pascack) and the buyer (Merchia), Lamb was "ethically obligated to safeguard the $400,000" until he "was authorized to release the funds by [Pascack] or until [he] received a Court Order." Opp. Mot. Inj. Ex. L ¶ 5 [#33-11]. To this end, Lamb asked Plaintiff to sign a release as to any claim on the Property in order to facilitate a release of the funds, but Plaintiff refused as Plaintiff continues to assert that he has rights to the Property. See Opp. Mot. Inj. Ex. B, at 1 [#33-3]; see also State Court Compl. ¶ 18, Pankaj v. Pascack VA Group LLC., No. 2085-cv-1154 (Mass. Sup. Ct. Oct. 21, 2020) [#33-2]. Indeed, at the hearing on

---

[1] On November 24, 2020, the state court judge denied Merchia his request for a preliminary injunction against Pascack. The judge concluded that Merchia had failed to show a likelihood of success on the merits as he was improperly seeking "both specific performance and the return of his money" and, even more, that there was "considerable doubt as to whether or not a viable contract with the necessary provisions and material terms for the conveyance of property existed at the time Plaintiff wired the money." Opp'n Mot. Inj. Ex. C, at 5 [#33-4]; see also Opp'n Mot. Inj. Ex B, at 14–19 [#33-3] (subsequent emails between Plaintiff and Lamb (as Pascack's representative) indicating that the two were continuing to negotiate specific terms of a purchase and sale agreement between October 12, 2020 and October 14, 2020). On December 1, 2020, on Merchia's motion, the state court action was voluntarily dismissed pursuant to Mass. R. Civ. P. 41(a)(1). Opp'n Mot. Inj. Ex. C, at 6 [#33-4].

this motion, Plaintiff continued to assert his rights to the Property and that he was entitled to specific performance and/or damages against Pascack for breach of this same agreement.

II.   Relevant Standard on Motion for Preliminary Injunction

The issuance of a preliminary injunction before a trial on the merits can be held is an "extraordinary remedy" that shall only enter if plaintiff makes a clear showing that he is entitled to such relief. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain preliminary injunctive relief, a plaintiff must demonstrate that: (1) he has a substantial likelihood of success on the merits; (2) there is a threat of irreparable harm if an injunction is withheld; (3) the balance of hardships between the parties weighs in the plaintiff's favor; and (4) the requested injunction would not conflict with the public interest. Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003).

A motion for a preliminary injunction brought, as here, under Fed. R. Civ. P. 65 "does not confer either subject-matter or personal jurisdiction on the court." 11A Wright & Miller, Federal Practice and Procedure, § 2941 (3d ed. 2020). Instead, as with any other civil action, "an independent basis for asserting federal question or diversity jurisdiction must be shown." Id. Where, as here, the court's jurisdiction over the action turns on a party's citizenship for the purpose of establishing diversity jurisdiction, "the party invoking diversity jurisdiction must prove domicile by a preponderance of the evidence." Garcia Perez v. Santaella, 364 F.3d 348, 350 (1st Cir. 2004).

III.   Discussion

Defendants challenge Plaintiff's motion for a preliminary injunction on three main grounds. First, Defendants argue that the court lacks subject-matter jurisdiction over Plaintiff's claim because the parties are not diverse as Plaintiff asserts. Second, Defendants argue that

Plaintiff has an adequate remedy at law, precluding him from the requested preliminary injunctive relief. Third, Defendants argue that Plaintiff has not established a likelihood of success on the merits because, contrary to Plaintiff's claims, there was no escrow agreement in place between Merchia and Lamb governing the $400,000. As set forth below, the court finds, at least preliminarily, that it does have jurisdiction to hear Plaintiff's claims. However, Plaintiff has not made a clear showing that he will suffer an irreparable injury absent an injunction. Accordingly, the court does not reach the question of Plaintiff's likelihood of success on the merits for the purposes of this motion.

    *A. Subject-Matter Jurisdiction*

The question of a court's subject-matter jurisdiction is "always open" and "courts at every stage of the proceedings are obligated to consider the issue." Prou v. United States, 199 F.3d 37, 45 (1st Cir. 1999) (citing Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982)). Here, Plaintiff contends that the court possesses subject-matter jurisdiction over his claim under 28 U.S.C. § 1332, the diversity jurisdiction statute. Compl. ¶ 1 [#1]. Namely, Plaintiff avers that he "is a citizen of the State of Florida," and that Defendants "are citizens of the Commonwealth of Massachusetts." Id.

In their Opposition to Plaintiff's Motion for Preliminary Injunction, Defendants challenge Plaintiff's assertion that he is a citizen of Florida. Opp'n Mot. Inj. 7–10 [#33]. In response, Plaintiff submitted an Affidavit [#45] stating that "[s]ince 2012, whenever I entered my home at 2715 Spanish River Rd, Boca Raton, Florida, after purchasing the home, I intended the home to be my true, fixed, and permanent home to which I intended to return whenever I was absent from it." Aff. ¶ 1 [#45]. Plaintiff further asserted that "[s]ince 2012 I have never removed my belongings from the home" and that he has, inter alia, continued to vote in Florida. Id. ¶¶ 2–4.

Plaintiff's claim that he has been a citizen of Florida from 2012 to the present, without interruption, is directly contradicted by representations he has made in other federal and state court cases from 2017 through the spring of 2019, concerning his move from Florida to Massachusetts and his Massachusetts citizenship.[2] The court finds that Merchia's statements that he was a Massachusetts citizen for the purpose of availing himself of the jurisdiction of the federal courts (and conferring benefits upon on his children) estop him from now taking a contradictory position as to his citizenship during that period. See Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004) ("judicial estoppel applies when 'a party has adopted one position, secured a favorable decision, and then taken a contradictory position in search of legal advantage'") (citing InterGen N.V. v. Grina, 344 F.3d 134, 144 (1st Cir. 2003)).

Lamb argues that, as a result of these previous statements, the court must "find that Dr. Merchia's citizenship is Massachusetts for the purposes of subject matter jurisdiction." Opp'n

---

[2] See Mot. Emergency Hr'g in Merchia v. Femmino, No. 8:17-cv-02742, ECF No. 8 (D. Md. Sep. 14, 2017) (stating that Merchia sought emergency relief concerning the purchase of a property in Boston since "it concerns Plaintiff's home and where he will live with his family including children ranging from age 1 year old to 11 years old"); Compl. in Merchia v. Va. Bd. Med., No. 18-cv-11136, ECF No. 1, ¶ 2 (D. Mass. May 30, 2018) (claiming for the purpose of establishing diversity jurisdiction, that he "resides in Massachusetts"); id. at Am. Compl., ECF No. 24 (reaffirming this statement on January 14, 2019); Prelim. Inj. Hr'g Tr. in Doe v. Perille, No. 1884-cv-2594 (Mass. Sup. Ct. Aug. 24, 2018) (stating at a preliminary injunction hearing regarding his son's admission to Boston Latin School that he "moved to Massachusetts probably in March or so of this year") (available at Ex. to Defs.' Mot. Dismiss in Doe v. Perille, No. 18-cv-11875, ECF No. 26-2 at 11 (D. Mass. Sept. 25, 2018)); Notice of Removal in Archway IP Law PLLC v. Merchia, No. 19-cv-404, ECF No. 1, ¶¶ 1, 3 (E.D. Va. Apr. 5, 2019) (stating that "Merchia is a resident of the Commonwealth of Massachusetts" for the purposes of establishing the court's jurisdiction over the action); id. at Mot. Reconsideration Ex. B, ECF No. 24, ¶¶ 18–19 (Affidavit filed in Circuit Court of Fairfax County, Case No. CL 2017-12647, stating that "[i]n February 2018 I moved my usual place of abode from Florida to Massachusetts" and that "[w]hen I moved to Massachusetts I informed the United States Postal Service, and requested they forward mail to my new place of abode").

6

Mot. Inj. 10 [#33]. Notably, in July 2019, when Merchia contended in a Notice of Removal that he was "a resident of Florida as he maintains his domicile there," the plaintiff to that action sought remand based on Merchia's then-recent statements regarding his Massachusetts' residency, and the court granted the motion and remanded the action. See Notice of Removal, Mem. Supp. Pl.'s Mot. Remand, and Order of Remand in Richardson v. Merchia, No. 19-cv-11652, ECF Nos. 1, 10, 34 (D. Mass. 2019). However, "[a] citizen of the United States can instantly transfer his citizenship from one state to another," Hawes v. Club Ecuestre El Comandante, 598 F.2d 698, 701 (1st Cir. 1979), and therefore the question before the court is not Merchia's citizenship in 2018 and 2019 (which was Massachusetts), but his citizenship in December 2020, when he filed this action. See Grupo Dataflux v. Atlas Glob. Grp., L.P., 541 U.S. 567, 570 (2004) ("It has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought'") (quoting Mollan v. Torrance, 22 U.S. 537, 539 (1824)).

Citizenship is determined by domicile, which can be established by demonstrating that the individual is physically present in the state and has an intent to remain indefinitely." Garcia Perez, 364 F.3d at 350 (internal citations omitted). "'[W]hile a person may have more than one residence, he can only have one domicile.'" Aponte–Dávila v. Municipality of Caguas, 828 F.3d 40, 49 (1st Cir. 2016) (quoting Bank One, Tex., N.A. v. Montle, 964 F.2d 48, 53 (1st Cir. 1992)). Courts typically take into account a number of factors to determine a party's ties to a purported domicile, including:

> current residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs and other associations; place of employment or business; driver's license and other automobile registration; [and] payment of taxes . . . .

7

Garcia Perez, 364 F.3d at 351 (quoting 13B Wright, Miller & Cooper, Federal Practice and Procedure § 3612 (2d ed.1984)).

The only evidence before the court as to Plaintiff's current domicile is his Affidavit [#45]. The Affidavit is notable for its lack of candor and partial truths. For example, Merchia attempts to explain away the prior filings by pointing out that he only ever represented himself as a *resident* of Massachusetts, not a *citizen*, Aff. ¶ 20 [#45], ignoring the fact that many of these statements were made in the context of asserting diversity jurisdiction.[3] Furthermore, Merchia states that "[f]or many years I have been licensed to practice medicine and see patients in the states of Florida and Maryland. but not in Massachusetts." Aff. ¶ 16 [#45]. On its face, this statement conveys that Plaintiff is not and has not previously been licensed in Massachusetts. But Plaintiff has, in other proceedings, claimed that he maintained an active Massachusetts Medical License from no later than 2008 and running at least through 2019. See Am. Compl. in Va. Bd. Med., No. 18-cv-11136, ECF No. 24 (D. Mass. Jan. 14, 2019). Likewise, Plaintiff's affidavit conspicuously avoids stating how much time he has spent in Florida in the past several

---

[3] At the hearing on this motion, Plaintiff feigned ignorance as to distinctions between residency and citizenship, stating "[t]o be honest with you, these are not words that I up until these cases paid enough attention to, to not use interchangeably." The court does not credit this claim. Indeed, it is notable that where Plaintiff was asserting diversity jurisdiction over Massachusetts opponents, he referred to himself as a "citizen" of Florida, but where Plaintiff was asserting diversity jurisdiction over non-Massachusetts opponents, he referred to himself as a "resident" of Massachusetts but remained silent as to his citizenship. Additionally, in a previous state court action, Plaintiff held a protracted colloquy with the state court judge about the meaning of these terms and conveyed his accurate understanding of their meaning. See Prelim. Inj. Hr'g Tr. in Doe v. Perille, No. 1884-cv-2594 (Mass. Sup. Ct. Aug. 24, 2018) (Merchia discussing with the court the difference between a residence and a domicile and arguing that while his son was temporarily not a resident of Boston, Boston was his son's home since, in Merchia's words, his son "physically came to Boston with the intent of remaining indefinitely in Boston. He was seeking permanent abode in Boston, and he stayed at temporary abodes until he could obtain that permanent abode") (available at Ex. to Defs.' Mot. Dismiss in Doe v. Perille, No. 18-cv-11875, ECF No. 26-2, 10 (D. Mass. Sept. 25, 2018)).

years, stating only that two thirds of his time has been spent "at [his] homes in Florida and Maryland." See Aff. ¶ 17 [#45]. Indeed, it is not even apparent if Plaintiff was physically present or residing in Florida at the time he filed this suit. See id. ¶ 23 (stating that he was "at [his] home in Florida shortly before filing this suit" and that "since leaving [his] home in Florida shortly before filing this suit on December 2, 2020" he had not "been in any other place with the intent to have my true, fixed, or permanent home be there").

Nonetheless, for purposes of the present motion, the court accepts Merchia's unrebutted statements that he: voted in the November 2020 United States presidential election in Florida (albeit by mail); participated in the United States census in Florida in September 2020; holds a Florida driver's license; has his vehicle registered in Florida; and is not currently licensed to practice medicine in Massachusetts. Id. ¶¶ 7–8, 11–12, 16. Based on these assertions, the court finds, at least on a preliminary basis, a likelihood that Merchia is presently domiciled in Florida. Accordingly, the court has subject-matter jurisdiction over his action for the purposes of this motion.

### B. Irreparable Harm

Although the court has preliminarily determined that it has subject matter jurisdiction, Plaintiff's motion for preliminary injunctive relief fails on the merits since Plaintiff has not established that he is likely to suffer an irreparable injury absent a preliminary injunction. Plaintiff is seeking return of funds that are presently being held in Lamb's trust account. He makes no claim that the funds will somehow be dissipated or not available to satisfy any monetary relief he may obtain in this case.

Plaintiff contends instead that the extraordinary remedy of a preliminary injunction is warranted in this action for money damages because Plaintiff "needs access to his $400,000" "to

complete emergency use authorization and manufacture" of "a ventilatory assist device to help patients with COVID-19." Mot. Inj. ¶¶ 13–14 [#14]. Plaintiff states that without preliminary injunctive relief, he "will experience the irreparable harm of not being able to help save the lives of patients who will needlessly die before getting access to the device Plaintiff has designed." Id. ¶ 17.

Plaintiff's argument concerning his plans for using these funds is not a cognizable basis for granting the requested relief. Even if the court accepted, for the purpose of argument, the premise that without these funds Plaintiff will be unable to develop a life-saving medical device, that anticipated harm is not sufficiently concrete or related to the claims here so as to constitute a clear showing of irreparable harm. See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 19 (1st Cir. 1996) ("[A] preliminary injunction is not warranted by a tenuous or overly speculative forecast of anticipated harm"). Because Plaintiff has not shown a likelihood of irreparable harm absent an injunction, preliminary equitable relief may not issue. Winter, 555 U.S. at 22.

IV. Conclusion

For the reasons set forth above, Plaintiff's Motion for Injunction [#14] is DENIED.

IT IS SO ORDERED.

Date: February 26, 2021

/s/ Indira Talwani
United States District Judge