UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DR. PANKAJ MERCHIA, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Civil Action No. 4:20-cv-40100-IT |
| | * |
| PASCACK VA GROUP, LLC, BEREL | * |
| KRUG, MARCUS & MILLICHAP, INC., | * |
| LAMB AND ASSOCIATES, P.C. and | * |
| MARTIN LAMB, ESQ., | * |
| | * |
| Defendants. | * |

MEMORANDUM & ORDER

March 2, 2023

TALWANI, D.J.

Plaintiff Dr. Pankaj Merchia, proceeding pro se, brings fraud and conspiracy claims against brokerage firm Marcus & Millichap, Inc. ("M&M") related to a failed real estate transaction. See 2d Am. Compl. [Doc. No. 119].[1] Pending before the court is M&M's Motion to Dismiss [Doc. No. 123]. For the reasons set forth below, the motion is granted.

---

[1] The Second Amended Complaint [Doc. No. 119] brought these same claims against Attorney Martin Lamb and his law firm, Lamb and Associates, P.C. (collectively, "Lamb"), and Pascack VA Group, LLC ("Pascack") and its managing member and owner, Berel Krug, and additional claims against Pascack. On March 2, 2023, the court dismissed the claims against these Defendants, where Merchia had failed to respond to Lamb's Motion to Dismiss [Doc. No. 121], and had failed to timely serve Pascack and Krug. See Order [Doc. No. 132]; Order [Doc. No. 133].

I.      **Factual Background as Alleged in the Second Amended Complaint**[2]

In November 2019, Pascack VA Group, LLC ("Pascack") purchased a five-story mixed commercial manufacturing property located at 1 Jackson Street along with a parking lot at 66 Jackson Street in Worcester, Massachusetts (the "Property"). 2d Am. Compl. ¶ 10 [Doc. No. 119]. At some time prior to September 14, 2020, Pascack began offering the Property for sale. Id. at ¶ 11. Pascack engaged M&M, including M&M agent Harrison Klein, to market the Property and assist with its sale. Id. M&M listed the Property on various platforms and included an offer to share the commission with the buyer's agent. Id.

On September 14, 2020, Merchia, with the assistance of a buyer's agent, sent a draft purchase and sale agreement to M&M to purchase the Property. Id. at ¶ 12. Merchia was looking for offices and laboratory and manufacturing space for his businesses Vent10 Corporation and CPAP19 (the "Merchia Entities"), and a temporary residence for himself while he was setting up these businesses. Id. at ¶ 14.

On September 17, 2022, M&M responded that Merchia was required to tour the property prior to the execution of an agreement. Id. at ¶ 13. M&M also informed Merchia that it was not willing to share commission with his agent and subsequently communicated solely with Merchia. Id. On or around September 18, 2022, Merchia toured the Property and informed M&M that he needed to have access to the Property soon or would have to look elsewhere for space. Id. at ¶ 14.

---

[2] This section is also based on the exhibits attached to the complaint. See Trans-Spec Truck Service, Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008) (internal citations and quotations omitted) ("Exhibits attached to the complaint are properly considered part of the pleading for all purposes, including Rule 12(b)(6).") (internal quotations omitted).

On September 24, 2020, Klein informed Merchia that the seller wanted full payment upfront, would not sign a typical purchase and sale agreement, and wanted to proceed to closing without an agreement. Id. at ¶ 15. On September 25, 2020, Merchia emailed Lamb asserting that Klein had told Merchia that the seller "is concerned that I won't perform," but was willing to sell Merchia the property with full payment upfront. Id.; Ex. 101 [Doc. No. 119-1]. Merchia proposed: (1) a $350,000 wire transfer to Lamb, which would be held in an escrow account until Lamb provided Merchia's nominee with clear title with enhanced title insurance, and a recorded deed, (2) a transfer of the keys to Merchia and exclusive use of the Property "after Lamb & Associates receives the money," and (3) a fallback provision for return of Merchia's payment in the event Lamb has not provided clear title with enhanced title insurance to Merchia's nominee and recorded a quitclaim deed by November 14, 2020. Ex. 101 [Doc. No. 119-1]. On September 28, 2020, Merchia followed up, asking if the proposal was what Klein had meant by "closing without a P&S?" Id.

On September 30, 2020, M&M sent Merchia a counteroffer that had been agreed to by the seller. 2d Am. Compl. ¶ 17 [Doc. No. 119]; Ex. 102 [Doc. No. 119-2]. The counteroffer set forth the following terms: (1) Merchia would wire $400,000 to Lamb, who would hold the funds in escrow until Lamb provided Merchia's nominee clear and marketable title and recorded the deed for the Property (but title insurance and buyer's legal work would be at Merchia's own cost), (2) Merchia would receive the keys and occupancy of the Property "on the day of closing/funding," and (3) if, by October 21, 2020, Lamb "has not (i) provided buyer's nominee clear and marketable title and (ii) recorded a Quitclaim deed at the Worcester Registry of Deeds for [Merchia's] Nominee then Lamb & Associates wires back the $400,000 the next business day." Ex. 102 [Doc. No. 119-2]. Merchia accepted the counteroffer the same day. Id. Later that

3

day, Merchia asked for a confirmation of the wire transfer instructions. Ex. 104 [Doc. No. 119-4].

The next day, Krug emailed Klein and Lamb stating that he and Lamb "just spoke and agreed that we will ask to send the 400 with no additional details. Once he sends it, [Lamb] will follow up with an email explaining the extra costs of closing etc. We are likewise not discussing the key question." Ex. 103 [Doc No. 119-3]. At the same time, Lamb confirmed the wire transfer instructions to Merchia. Ex. 104 [Doc. No. 119-4]. Shortly thereafter, Klein responded to Krug's email, stating "Sounds good, lets [sic] see what happens." Ex. 103 [Doc. No. 119-3].

On October 7, 2020, Merchia wired $400,000 to Lamb. 2d Am. Compl. ¶ 28 [Doc. No. 119]. On October 8, 2020, Merchia entered into a separate agreement with Ek Jackson LLC ("Ek Jackson"), in which Merchia would deed the property to Ek Jackson as the title nominee in exchange for $500,000. Id. at ¶ 29. Merchia and the Merchia Entities entered into leases with EK Jackson for Merchia's use of the Property. Id. at ¶ 30.

On October 13, 2020, Lamb and Krug exchanged emails in which they agreed that Pascack needed a November sale date for the Property to take advantage of the long-term capital gains tax rate on the Property that would apply if the Property was sold after the one-year anniversary of its purchase. Id. at ¶ 31.

When Merchia learned he would not be given keys to the Property, Merchia sought a return of his $400,000 in escrow. Id. at ¶ 32. On October 16, 2020, Lamb asked Krug if he should return the $400,000 paid by Merchia. Id. at ¶ 33. Krug responded that he was not sure, and that he wanted Merchia to sign a release to ensure the Property was not tied up with litigation. Id. Following Krug's instruction, Lamb conveyed to Merchia that Lamb would only

return the money if Merchia signed a mutual release. Id. Merchia declined to sign the mutual release and Lamb continued to hold the $400,000 in escrow. Id. at ¶ 34.

On October 21, 2020, the deadline for returning the funds, Merchia filed suit against Pascack in Worcester County Superior Court. Id. at ¶ 35. On November 17, 2020, Pascack pleaded that it had never authorized M&M to convey the Property without a purchase and sale agreement, nor did it authorize M&M to bind it to a contract or accept anything but a purchase and sale agreement. Id. at ¶ 36. On November 19, 2020, Merchia voluntarily dismissed the Worcester case. Id. at ¶ 37.

In February 2021, Lamb brought an interpleader claim against Pascack regarding the rights to the $400,000 paid by Merchia and held in escrow. Id. at ¶ 38. On March 1, 2021, Merchia sent Lamb's attorney a copy of the October 1, 2021 email which Merchia contends "memorializ[es]" Defendants' scheme to defraud him. Id. at ¶ 41; see Ex. 103 [Doc. No. 119-3]. The next day, Lamb's attorney informed Merchia that they would return the $400,000 to him. 2d Am. Compl. ¶ 42 [Doc. No. 119]. On March 4, 2021, Lamb returned the $400,000 to Merchia, and the next day he voluntarily dismissed the interpleader action. Id. at ¶ 43.

## II. Discussion

Merchia brings claims for fraud and misrepresentation (Count I), conspiracy (Count IV), and violations of M.G.L. c. 93A § 11 (Count V) against M&M. M&M moves to dismiss all claims for lack of subject matter jurisdiction and failure to state a claim.

### A. *Lack of Subject Matter Jurisdiction*

M&M argues that Merchia lacks Article III standing where any alleged damages were sustained not by Merchia, but by the Merchia Entities and Ek Jackson. Merchia counters that he seeks to recover damages he personally sustained, including his inability to use the $400,000

5

held in escrow, his losses from the failed transaction with Ek Jackson, and his inability to use the Property. Opp. 2 [Doc. No. 128].

The doctrine of standing is rooted in Article III of the Constitution, which confines federal courts to the adjudication of actual "cases" and "controversies." See U.S. Const. Art. III, § 2, cl. 1; Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992). Standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016), as revised (May 24, 2016) (citing Lujan, 504 U.S. at 560-61).

A motion to dismiss for lack of constitutional standing is properly brought as a challenge to the court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). See Katz v. Pershing, LLC, 672 F.3d 64, 70 (1st Cir. 2012). "Because federal courts are courts of limited jurisdiction, federal jurisdiction is never presumed." Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). Where the issue of standing is based on the pleadings, "the plaintiff bears the burden of establishing sufficient factual matter to plausibly demonstrate his standing to bring the action." Hochendoner v. Genzyme Corp., 823 F.3d 724, 731 (1st Cir. 2016). A court should treat all well-pleaded facts as true and provide the plaintiff the benefit of all reasonable inferences. Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009). Dismissal is appropriate only when the facts alleged in the complaint, taken as true, do not support a finding of federal subject matter jurisdiction. Id. A challenge to the court's subject matter jurisdiction must generally be addressed before addressing the merits of a case. See Acosta-Ramirez v. Banco Popular de Puerto Rico, 712 F.3d 14, 18 (1st Cir. 2013) ("Federal courts are obliged to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case").

6

"As a general rule, a corporation and its shareholders are distinct juridical persons and are treated as such in contemplation of law." Pagan v. Calderon, 448 F.3d 16, 28 (1st Cir. 2006). But here, Merchia has not alleged that both of the Merchia Entities were corporations. Rather, he asserts that he founded the Merchia Entities, and planned on using the Property partly as a residence while he was "setting up these businesses during the COVID-19 pandemic." 2d Am. Compl. ¶ 14 [Doc. No. 119].[3] Moreover, as alleged, it was Merchia, transacting "as an individual acting in a business capacity," id. at ¶ 1, who wired the $400,000 to Lamb, id. at ¶ 28. Where Merchia alleges that both he and the Merchia Entities were injured, see id. at ¶ 44, and where Merchia does not claim that both Merchia Entities were separate corporate entities, Merchia has sufficiently alleged that "he, himself, is among the persons injured by that conduct," see Hochendoner, 823 F.3d at 732.

B.     *Failure to State a Claim*

M&M also argues that all counts against M&M should be dismissed where Merchia does not attribute any fraudulent statements to M&M and does not allege any substantial assistance or knowledge of tortious conduct by M&M.

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to

---

[3] Merchia also alleges that CPAP19 was "a project that I have personally [been] working on and is not a legal entity independent of me." Opp. 2, fn. 1 [Doc. No. 128].

raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In addition, "an adequate complaint must include not only a plausible claim but also a plausible defendant." See Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 594 (1st Cir. 2011).

In general, a complaint filed pro se is "liberally construed" and held to "less stringent standards than formal pleadings drafted by lawyers." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). That does not mean that pro se plaintiffs need not plead facts sufficient to state a claim, but it does afford them some leniency when facing a motion to dismiss. See Ferranti v. Moran, 618 F.2d 888, 890 (1st Cir. 1980). However, allegations of fraud are subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b). See N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 15 (1st Cir. 2009) (holding that the particularity requirement applies not only to actual fraud claims but also to "associated claims where the core allegations effectively charge fraud"). Thus, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "This heightened pleading standard is satisfied by an averment of the who, what, where, and when of the allegedly false or fraudulent representation." Rodi v. S.N.E. Sch. of Law, 389 F.3d 5, 15 (1st Cir.2004) (internal quotations and citations omitted). A plaintiff must also identify "the basis for inferring scienter." N. Am. Catholic Educ. Programming Found., 567 F.3d at 13. However, "the specificity requirement extends only to the particulars of the allegedly misleading statement itself. The other elements of

8

fraud, such as intent and knowledge, may be averred in general terms." Rodi, 389 F.3d at 15 (internal citation omitted).

1. Fraud and Misrepresentation (Count I)

Merchia alleges that M&M made false representations to Merchia in connection with the sale of the Property amounting to fraud and misrepresentation (Count I). M&M argues that Merchia has failed to identify statements made by M&M that were false, or which induced reliance. Merchia counters that M&M has failed to meet its burden to show it did not know of the seller's intentions at the time of the offer, and that M&M's omissions after it allegedly learned of the seller's intentions constituted a misrepresentation. Opp. 3 [Doc. No. 128].

"To prevail on a claim of fraudulent misrepresentation under Massachusetts law, the plaintiff must show that the defendant 'made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage.'" Eureka Broadband Corp. v. Wentworth Leasing Corp., 400 F.3d 62, 68 (1st Cir. 2005) (quoting Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 772 N.E.2d 1054, 1066 (2002)).

Merchia alleges that M&M misrepresented the terms of the sale agreement because M&M agreed to make an offer on behalf of the seller on September 30, 2020, without disclosing that Pascack intended to delay the closing and charge additional fees. 2d Am. Compl. ¶¶ 20-22 [Doc. No. 119].[4] With regard to the additional fees, however, the counteroffer included no

---

[4] Merchia also alleges that prior to the September 30th counteroffer, M&M told Merchia that it was not willing to share the commission from the sale of the Property with the buyer's agent, contradicting its original advertising. See 2d Amend. Compl. ¶¶ 11, 13 [Doc. No. 119]. However, Merchia does not allege that the original advertising was false at the time it was made, or that M&M had any knowledge of its falsity at the time such that the statement would be a misrepresentation.

misrepresentation but instead included additional or different terms that Merchia accepted, namely, that Merchia would be solely responsible for costs associated with title insurance and legal work and that he would not receive occupancy on the day of the wire transfer to be held in escrow as Merchia originally offered but on the "on the day of the closing/funding." Compare Ex. 101 [Doc. No. 119-1] (Merchia's original offer) with Ex. 102 [Doc. No. 119-2] (counteroffer).

As a negotiating party, Merchia was free to accept, reject, or inquire further as to the counteroffer communicated by M&M on behalf of the seller, and ultimately he accepted the terms of the counteroffer. See 2d Am. Compl. ¶ 19 [Doc. No. 119] (stating that the September 30, 2020 counteroffer "was a binding-contract once Dr. Merchia accepted it and wired the $400,000 purchase price"). The terms of the counteroffer as communicated by M&M, although materially different than Merchia's original offer, do not give rise to a misrepresentation where the parties agreed that Merchia was responsible for additional closing costs and that Merchia would not receive occupancy until the closing. See, e.g., Masingill v. EMC Corp., 449 Mass. 532, 541, 870 N.E.2d 81, 89 (2007) (holding that "[i]t is unreasonable as a matter of law to rely on prior oral representations that are (as a matter of fact) specifically contradicted by the terms of a written contract" to support a misrepresentation claim).

Further, Merchia's reliance on the October 1, 2020 email [Doc. No. 119-3] received by M&M after the counteroffer and acceptance is misplaced where the internal communications do not materially contradict the terms of the agreement, but only indicate that Lamb will follow up with Merchia regarding the extra costs of closing and that they will not be discussing occupancy,

which by the agreed-upon terms was not required at the time Merchia wired the funds to Lamb to be held in escrow. To the extent that Merchia relies on the October 1, 2020 email to allege that M&M made a false representation regarding the seller's intentions to delay the closing until November to avoid short-term capital gains taxes, Merchia has similarly failed to state a claim where he does not allege any further involvement by M&M after it sent the September 30, 2020 counteroffer.

Nor can Merchia state a claim for fraudulent concealment. Although Massachusetts law recognizes that cause of action, see In re Neurontin Mktg., Sales Pracs. & Prod. Liab. Litig., 618 F. Supp. 2d 96, 113 (D. Mass. 2009), "[l]iability for nondisclosure exists under Massachusetts law only where there is a duty to disclose," Taylor v. Am. Chemistry Council, 576 F.3d 16, 31 (1st Cir. 2009). Here, M&M only owed a duty of reasonable care, see DeWolfe v. Hingham Ctr., Ltd., 464 Mass. 795, 800, 985 N.E.2d 1187, 1192 (2013), but not a fiduciary duty that required disclosure of internal details related to the finalization of the sale.

Merchia relies on additional exhibits attached to his Opposition [Doc. No. 128] for further arguments. Those documents are not properly before the court on a motion to dismiss. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (holding that, barring certain "narrow exceptions" not present here, "any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden" on a motion to dismiss). Even if Merchia were to amend his complaint to include the additional exhibits such that the court could consider them, the exhibits do not change the analysis. For example, Merchia attaches an October 13, 2020 email chain in which Klein is copied on emails between Lamb and Krug about, inter alia, the capital gains tax to argue that the tax issue was the cause for the closing not occurring by the October 21, 2020 deadline. See Ex. 109 [Doc. No. 128-4]. That email may support the claim that

11

Pascack had a financial motivation to delay the sale but it does not show that Pascack, let alone M&M, was contemplating delaying the closure at the time of the counteroffer. M&M, moreover, was not an active participant in this email communications, and is only copied on the conversations.

Similarly, Merchia argues in his opposition that on October 7, 2020, M&M confirmed receipt of Merchia's wire transfer and communicated that Lamb hoped that the closing would occur in 2-3 weeks, and that the seller was willing to provide advance occupancy contingent on a lease agreement. Ex. 107 [Doc. No. 128-2]. However, Merchia does not allege that M&M's email was communicated to induce reliance, as Merchia had already performed by wiring the $400,000 to Lamb. Further, the communication did not materially misrepresent or contradict the terms of the agreement to support a misrepresentation claim.

Accordingly, M&M's Motion to Dismiss [Doc. No. 123] is GRANTED as to Count I.

2.  Chapter 93A (Count V)

Merchia alleges that M&M's false representations amount to unfair trade practices under M.G.L c. 93A § 11 (Count V).

"To state a claim under the consumer protection statute, [Mass. Gen. Laws ch. 93A, § 9,] a plaintiff must allege facts sufficient to establish four elements: first, that the defendant has committed an unfair or deceptive act or practice; second, that the unfair or deceptive act or practice occurred in the conduct of any trade or commerce; third, that the plaintiff suffered an injury; and fourth, that the defendant's unfair or deceptive conduct was a cause of the injury." Rafferty v. Merck & Co., Inc., 479 Mass. 141, 161, 92 N.E.3d 1205 (2018) (internal quotations omitted). For a business plaintiff to state a claim under Chapter 93A, § 11, it generally must

plead the additional fifth element that there was a "commercial relationship" between itself and a defendant. Id. at 162 n.7.

Here, where Merchia has not sufficiently alleged that M&M made any false representations, Merchia's 93A claim similarly fails. See Cummings v. HPG Int'l, Inc., 244 F.3d 16, 25 (1st Cir. 2001) ("There can be no claim of unfairness based on a misrepresentation [under Chapter 93A] where…[plaintiff] has failed to show [defendant] made any deceitful or even negligently false statements."); see also Tomasella v. Nestlé USA, Inc., 962 F.3d 60, 72 (1st Cir. 2020) (internal citation omitted) (explaining that an for an act to be deceptive, there must be, inter alia, "a representation, practice, or omission likely to mislead consumers.")

Accordingly, M&M's Motion to Dismiss [Doc. No. 123] is GRANTED as to Count V.

3. Civil Conspiracy (Count IV)

Merchia alleges that M&M conspired to make false representations and promises to Merchia in connection with the sale of the Property (Count IV). 2d Am. Compl. ¶¶ 60-62 [Doc. No. 119]. M&M argues that any claim based on a fraudulent misrepresentation fails where there was no misrepresentation or concerted action.

Massachusetts recognizes two types of civil conspiracy—one based on coercion, and one based on Section 876 of the Restatement (Second) of Torts. See Taylor, 576 F.3d at 34. Conspiracy based on tort is "a form of vicarious liability for the tortious conduct of others." Id. "To establish civil conspiracy, a plaintiff must provide evidence that the defendants agreed together to commit an underlying tort." Bassett v. Jensen, 459 F. Supp. 3d 293, 312 (D. Mass. 2020) (internal quotations omitted). Massachusetts courts recognize two theories of tort-based conspiracy liability under the Restatement: "concert of action," and "substantial assistance" or "aiding and abetting." Id.; see Maruho Co., Ltd. v. Miles, Inc., 13 F.3d 6, 9 (1st Cir.1993).

13

Where Merchia bases his conspiracy allegation in tort, but alleges that all Defendants, including M&M "explicitly agreed on a concert of action," and "gave substantial assistance to and/or aided and abetted" in making false representation and promises to Merchia, see 2d Am. Compl. ¶ 61 [Doc. No. 119], the court addresses both theories of liability.

A plaintiff alleging a concert of action theory of civil conspiracy must plausibly allege that "the defendant and the other have an agreement to perform the act or achieve the particular result" and the defendant's own conduct was tortious. Payton v. Abbott Labs, 512 F. Supp. 1031, 1035 (D. Mass. 1981). Where Merchia has not demonstrated that M&M itself made any false statements, see supra, Sec. II.B.1, and has alleged no additional tortious conduct, Merchia has not sufficiently pleaded that M&M engaged in a concert of action to make false representations to him.

Alternatively, "under the substantial assistance theory, a person may be liable in tort if he knows that the ... conduct [of another person] constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." Thomas v. Harrington, 909 F.3d 483, 491 (1st Cir. 2018) (internal citations and quotations omitted). "Key to this cause of action is a defendant's substantial assistance, with the knowledge that such assistance is contributing to a common tortious plan." Grant v. John Hancock Mut. Life Ins. Co., 183 F. Supp. 2d 344, 363 (D. Mass. 2002) (quoting Kurker v. Hill, 44 Mass. App. Ct. 184, 189, 689 N.E.2d 833, 837 (1998)). Although a plaintiff need not provide evidence of a common agreement between the parties, "the plaintiff must also establish that the defendant had an unlawful intent, consisting of both knowledge that the other's conduct is tortious[ ] and an intent to substantially assist or encourage that conduct." Thomas, 909 F. 3d. at 491 (internal quotations omitted). Notably, "[c]ourts in this district have applied a low bar for allegations of 'substantial assistance'

14

sufficient to survive a motion to dismiss." Brennan v. Ferreira, 251 F. Supp. 3d 338, 343 (D. Mass. 2017).

Merchia's allegations regarding M&M's conduct fall short of substantial assistance in the alleged conspiracy. As previously discussed, the September 30, 2020 counteroffer, and Merchia's subsequent acceptance, was not a misrepresentation, but rather a counteroffer that Merchia was free to accept or reject. Merchia has alleged no facts to indicate that M&M had any knowledge or intent to engage in tortious conduct to misrepresent the terms of the sale when it communicated the seller's offer to Merchia. See Grant, 183 F. Supp. 2d at 364 ("Because a conspiracy requires an agreement to commit a wrongful act, none can exist where an alleged participant lacks knowledge that a wrongful act is being perpetrated."). As alleged in the Second Amended Complaint [Doc. No. 119], after M&M sent the counteroffer to Merchia on September 30, 2020, M&M had no further involvement and took no further action other than confirming receipt of Krug's email that did not materially contradict the terms of the agreement.[5]

Accordingly, M&M's Motion to Dismiss [Doc. No. 123] is GRANTED as to Count IV.

C.     *Leave to Amend*

Merchia requests at the end of his opposition that if the court is inclined to grant M&M's motion, that he be granted leave to amend his complaint. See Opp. 6 [Doc. No. 128]. Federal

---

[5] In his Opposition, Merchia also alleges that M&M communicated with Merchia on October 7, 2020, to confirm receipt of the wire and to send Lamb's drafted lease agreement for advance occupancy. See Ex. 107 [Doc. No. 128-2]. As discussed, documents attached to the opposition are not properly before the court, and even if the court did consider them on a potential amended complaint, the October 7, 2020 email cannot be considered substantial action in an alleged conspiracy where the content of the email does not deviate from the terms of the agreement, and where any alleged plan to delay the closing date occurred after the email was sent. See 2d Am. Compl. ¶ 31 [Doc. No. 119] (alleging that Lamb and Krug exchanged emails on October 13, 2020, agreeing to a November closing date).

Rule of Civil Procedure 15(a)(1) allows a party to amend its pleadings "once as a matter of course" within certain time restraints. Merchia has already amended his complaint, and accordingly, is not entitled to amend his Second Amended Complaint [Doc. No. 119] without leave of court. Here, Merchia has provided no basis for an amendment and has not included a proposed amended complaint with his request.

Accordingly, the court finds no cause to allow a further amendment, and Merchia's request for leave to amend his Second Amended Complaint [Doc. No. 119] is DENIED.

### III.     Conclusion

For the foregoing reasons, M&M's Motion to Dismiss [Doc. No. 123] is GRANTED.

IT IS SO ORDERED.

March 2, 2023                                              /s/ Indira Talwani
                                                           United States District Judge